Ex. A

E-FILED IN OFFICE
CLERK OF STATE COU
GWINNETT COUNTY, GEORC
22-C-01603-
3/17/2022 4:20 F
TIANA P. GARNER, CLE

# IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| ZACKERY MORGAN AND BRITTNEY MORGAN, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION FILE NO. 22-C-01603-S5 |
| vs. | ) ) | |
| UNITED RENTALS, INC., UNITED RENTALS (NORTH AMERICA), INC., AND JOHN DOES 1-20 | ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) ) | |

## PLAINTIFFS' COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Zackery Morgan and Brittney Morgan and hereby file their **Complaint for Damages**, respectfully showing the following:

## INTRODUCTION

1.

This action seeks recovery for personal injuries and damages and loss of consortium suffered by Plaintiffs when, during the course of Zackery Morgan's employment, a self-priming centrifugal pump failed causing scalding hot, raw sewage to spray on his body from chest to knees resulting in second degree burns on eleven percent of his body, permanent scarring, and sexual and reproductive dysfunction. This lawsuit is brought under the substantive product liability and negligence laws of the State of Georgia.

## PARTIES, JURISDICTION, SERVICE, AND VENUE

2.

Plaintiff Zackery Morgan ("Mr. Morgan") is a resident of the State of Georgia who resides in Woodstock, Georgia in Cherokee County. By filing this action, Mr. Morgan avails himself of the

jurisdiction and venue of this court.

3.

Plaintiff Brittney Morgan ("Mrs. Morgan") is a resident of the State of Georgia who resides in Woodstock, Georgia in Cherokee County. By filing this action, Mrs. Morgan avails herself of the jurisdiction and venue of this Court.

4.

Defendant, United Rentals, Inc., successor in interest to BakerCorp by virtue of merger, (hereafter "United Rentals, Inc.") is a Delaware corporation maintaining its principal office at 100 Stamford Place, Suite 700, Stamford, Connecticut, 06902. According to its public filings, "United Rentals, Inc. . . . is principally a holding company and conducts its operations primarily through its wholly owned subsidiary, United Rentals (North America), Inc. ("URNA"), and subsidiaries of URNA."[1] United Rentals, Inc. is duly registered to do business in the State of Georgia and derives substantial revenues from ongoing and continuous leases and sales of its products in Georgia, including but not limited to the BakerCorp BP88LS-GD115AT self-priming centrifugal pump which was leased by the City of Woodstock from the Decatur, Georgia branch of United Rentals d/b/a Fluid Solutions. United Rentals, Inc. maintains a registered agent in Gwinnett County, Georgia where it may be served with process: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. United Rentals, Inc. is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91because it regularly solicits business in Georgia, because of its continuous and systematic business contacts with the State of Georgia, because its product was sold and/or leased in Georgia and caused harm in Georgia, because United Rentals, Inc. committed a tortious act that caused damages in Georgia, because United Rentals, Inc. derives substantial

---

[1] 2020 Annual Report available at: https://www.unitedrentals.com/our-company/investor-relations.

revenue from products used in Georgia, and because United Rentals, Inc. is duly registered to do business in the State of Georgia through its registered agent located in Peachtree Corners, Georgia.

5.

Defendant, United Rentals, (North America) Inc. (hereafter "URNA") is a Delaware corporation maintaining its principal office at 100 Stamford Place, Suite 700, Stamford, Connecticut, 06902. URNA is duly registered to do business in the State of Georgia and derives substantial revenues from ongoing and continuous leases and/or sales of its products in Georgia, including but not limited to the BakerCorp BP88LS-GD115AT self-priming centrifugal pump which was leased by the City of Woodstock from the Decatur, Georgia branch of United Rentals d/b/a Fluid Solutions. URNA maintains a registered agent in Gwinnett County, Georgia where it may be served with process: Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. URNA is subject to the jurisdiction of this Court pursuant to O.C.G.A. § 9-10-91 because it regularly solicits business in Georgia, because of its continuous and systematic business contacts with the State of Georgia, because its product was sold and leased in Georgia and caused harm in Georgia, because URNA committed a tortious act that caused damages in Georgia, because URNA derives substantial revenue from products used in Georgia, and because URNA is duly registered to do business in the State of Georgia through its registered agent located in Peachtree Corners, Georgia.

6.

The true identity of Defendant John Doe 1 is unknown to Plaintiffs, who, therefore, sue said Defendant John Doe 1 by such fictitious name. Plaintiffs will amend the Complaint to show said John Doe 1's true name and service address when the same has been ascertained. Plaintiffs allege on information and belief that John Doe 1 is in some manner responsible for the acts or

omissions alleged herein. On information and belief, John Doe 1 is a manufacturer of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

7.

The true identity of Defendant John Does 2-5 is unknown to Plaintiffs, who, therefore, sue said Defendants John Does 2-5 by such fictitious names. Plaintiffs will amend the Complaint to show said John Doe 2-5's true names and service addresses when the same has been ascertained. Plaintiffs allege on information and belief that John Does 2-5 are in some manner responsible for the acts or omissions alleged herein. On information and belief, John Does 2-5 are manufacturers of one or more component parts of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

8.

The true identity of Defendant John Doe 6 is unknown to Plaintiffs, who, therefore, sue said Defendant John Doe 6 by such fictitious name. Plaintiffs will amend the Complaint to show said John Doe 6's true name and service address when the same has been ascertained. Plaintiffs allege on information and belief that John Doe 6 is in some manner responsible for the acts or omissions alleged herein. On information and belief, John Doe 6 is a manufacturer of item number 538/2230, Hose 8x20 Kanaflex Suction – QC which was used on that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

9.

The true identity of Defendant John Doe 7 is unknown to Plaintiffs, who, therefore, sue

said Defendant John Doe 7 by such fictitious name. Plaintiffs will amend the Complaint to show said John Doe 7's true name and service address when the same has been ascertained. Plaintiffs allege on information and belief that John Doe 7 is in some manner responsible for the acts or omissions alleged herein. On information and belief, John Doe 7 is a manufacturer of item number 538/2405, Hose 8x20 Composite OSD-Flanged with gaskets and bolts which was used on that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

10.

The true identity of Defendant John Doe 8 is unknown to Plaintiffs, who, therefore, sue said Defendant John Doe 8 by such fictitious name. Plaintiffs will amend the Complaint to show said John Doe 8's true name and service address when the same has been ascertained. Plaintiffs allege on information and belief that John Doe 8 is in some manner responsible for the acts or omissions alleged herein. On information and belief, John Doe 8 is a manufacturer of item number 545/6823, 8" QC Strainer, sewer strainer, which was used on that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

11.

The true identity of Defendant John Doe 9 is unknown to Plaintiffs, who, therefore, sue said Defendant John Doe 9 by such fictitious name. Plaintiffs will amend the Complaint to show said John Doe 9's true name and service address when the same has been ascertained. Plaintiffs allege on information and belief that John Doe 9 is in some manner responsible for the acts or omissions alleged herein. On information and belief, John Doe 9 is a manufacturer of item number 545/6901, Float Switch, which was used on that certain pump that has been identified as item

number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

12.

The true identity of Defendant John Doe 10 is unknown to Plaintiffs, who, therefore, sue said Defendant John Doe 10 by such fictitious name. Plaintiffs will amend the Complaint to show said John Doe 10's true name and service address when the same has been ascertained. Plaintiffs allege on information and belief that John Doe 10 is in some manner responsible for the acts or omissions alleged herein. On information and belief, John Doe 10 is a manufacturer of item number 545/6890, 8" QC 90 Bend, which was used on that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

13.

The true identity of Defendant John Does 11-12 is unknown to Plaintiffs, who, therefore, sue said Defendants John Does 11-12 by such fictitious names. Plaintiffs will amend the Complaint to show said John Doe 11-12's true names and service addresses when the same has been ascertained. Plaintiffs allege on information and belief that John Does 11-12 are in some manner responsible for the acts or omissions alleged herein. On information and belief, John Does 11-12 are service representatives of one or more named defendants who consulted with the City of Woodstock in recommending and/or planning fluid solutions for its sewage system needs including recommendation of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

14.

The true identity of Defendant John Does 13-14 is unknown to Plaintiffs, who, therefore, sue said Defendants John Does 13-14 by such fictitious names. Plaintiffs will amend the Complaint to show said John Doe 13-14's true names and service addresses when the same has been ascertained. Plaintiffs allege on information and belief that John Does 13-14 are in some manner responsible for the acts or omissions alleged herein. On information and belief, John Does 13-14 are service representatives of one or more named defendants who assisted the City of Woodstock in the set-up and/or installation of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

15.

The true identity of Defendant John Does 15-17 is unknown to Plaintiffs, who, therefore, sue said Defendants John Does 15-17 by such fictitious names. Plaintiffs will amend the Complaint to show said John Doe 15-17's true names and service addresses when the same has been ascertained. Plaintiffs allege on information and belief that John Does 15-17 are in some manner responsible for the acts or omissions alleged herein. On information and belief, John Does 15-17 are service representatives of one or more named defendants who provided job site support to the City of Woodstock in the set-up and/or installation of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

16.

The true identity of Defendant John Does 18-20 is unknown to Plaintiffs, who, therefore, sue said Defendants John Does 18-20 by such fictitious names. Plaintiffs will amend the Complaint

to show said John Doe18-20's true names and service addresses when the same has been ascertained. Plaintiffs allege on information and belief that John Does 18-20 are in some manner responsible for the acts or omissions alleged herein. On information and belief, John Does 18-20 are successors to one or more manufacturers of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022 or of one or more component parts of that certain pump that has been identified as item number PU08144SA, BakerCorp Model: BP88LS-G0115AT bearing serial number 1R9AA1219DG296022.

17.

Venue is proper in this County and Court because two non-resident defendants maintain a registered agent for service of process in Gwinnett County.

## OPERATIVE FACTS

18.

In March of 2020, Plaintiff Zackery Morgan was employed with the Water & Sewer Maintenance Division of Water and Sewer Utility for the City of Woodstock (the "W&SM"). The W&SM is charged with maintaining pump stations, water lines, and sewer lines that carry wastewater and sewage from residences and from commercial, institutional and public facilities in Woodstock to the Rubes Creek Water Reclamation Facility.

19.

In general, a sewage system is made up of a network of pipes that rely on gravity to carry wastewater or sewage from each house or building flow to a sewer main. Periodically, a vertical pipe will run up from the sewer main to the surface, where it is covered by a manhole cover. Manholes allow access to the main for maintenance purposes. The sewer mains flow into

progressively larger pipes until they reach the wastewater treatment plant. Although most of the wastewater flows by gravity some low-lying areas require pumping. The sewer system will include a pumping station or a lift station to move the wastewater up over a hill. A pumping station is made up of a large tank, known as a wet well. The sewage will then sit in the wet well until it reaches a predetermined level at which point, a pump will kick in to pressurize the sewage so that it will travel out of the wet well and uphill. At times, the pumps used in the system require maintenance and portable bypass pumps will be brought in to do the job of the regular pump while the work is being done. Part of Plaintiff Zackery Morgan's job has included changing such pumps when needed.

20.

United Rentals, Inc. boasts that it "is the largest equipment rental and solutions company in the world. Backed by a robust fleet of rental equipment and a team of experts ready to custom-engineer a solution for projects of any size, we've got you covered. United Rentals offers trucks and trailers, power and HVAC solutions, air compressors and tools, earthmoving equipment and much more."[2] According to United Rental, Inc.'s public filings, a significant portion of its business is devoted to its "fluid solutions" segments whose "customers include construction companies involved in infrastructure projects, municipalities and industrial companies" throughout the United States and in Canada and Europe.[3] Also according to its public filings, a large portion of United Rentals, Inc.'s fluid solutions locations were acquired in its July of 2018 acquisitions of BakerCorp. United Rentals, Inc. and its affiliate, URNA have several branches and other rental outlets in the State of Georgia. Because most of the documentation associated with its leasing and fluid solutions services are titled simply as "United Rentals" with no designation of which United

---

[2] Available at: https://www.unitedrentals.com/locations/ga/decatur/fluid-solutions-pumps-tanks-filtration/i91.
[3] 2020 Annual Report available at: https://www.unitedrentals.com/our-company/investor-relations.

Rentals affiliate is the pertinent entity, henceforth in this Complaint, both entities will be collectively referred to as "United Rentals." According to United Rentals' publicly available "Rental Service Terms," under the heading "FLUID SOLUTIONS SERVICES," the document states: "'Fluid Solutions' means fluid storage, transfer, and/or treatment, and includes but is not limited to, the rental of Tanks, pumps, filtration, and any accessories, attachments, or other items delivered to Customer, as well as any ancillary services thereto. Fluid Solutions may include the design, installation, operation, ongoing maintenance, monitoring, and dismantling of the Fluid Solutions system."[4]

21.

On or about March 16, 2020, in connection with maintenance on a pump at a manhole station, the City of Woodstock rented a BakerCorp BP88LS-GD115AT self-priming centrifugal pump (the "Pump") from the Decatur, Georgia branch of United Rentals a/k/a Fluid Solutions. The subject Pump was supposed to be automatically self-priming so that fluids would be trapped in the subject Pump's body, preventing them from returning from the discharge side of the subject Pump to the suction side of the subject Pump when it was not in operation. Mr. Morgan was present at that time United Rentals dropped the subject Pump off and installed it. The representative from United Rentals did not provide any explanation or precautions about what to do if the subject Pump ceased performing as expected. No warnings were provided about the dangers that might be encountered if the Pump were to lose prime.

22.

The subject Pump was installed and ran normally for approximately one (1) day. At approximately 5:00 p.m. on March 17, 2020, the subject Pump would not keep up with the influx

---

[4] Available at: https://www.unitedrentals.com/legal/rental-service-terms-us.

of sewage. An employee for the City of Woodstock called United Rentals to address the issue. The subject Pump had been operating in automatic mode in a low RPM (revolutions per minute) setting. A technician from United Rentals arrived on scene at approximately 6:00 p.m. on March 17, 2020. The technician reprogrammed the subject Pump to run at a high RPM limit ostensibly to keep up with the flow of sewage. Once again, no warnings were provided about the dangers that might be encountered if the Pump were to lose prime or malfunction so that it overheated.

23.

On the morning of March 18, 2020, W&SM employees discovered the subject Pump was running but not pumping anything. The WS&M crew checked all the hoses and found no issues with hoses that would prevent the subject Pump from pumping normally. At that time, the manhole was in danger of overflowing with sewage and Mr. Morgan's supervisors directed him to remove the subject Pump and replace it with one of the City's pumps.

24.

Mr. Morgan and his crew shut down the subject Pump and waited a few minutes before unhooking the subject Pump from all hoses. The subject Pump was supposed to quickly lose prime, so that its contents would drain out prior to unhooking the Pump from hoses. There was no way to check to see if the Pump had retained prime or if its contents had drained.

25.

After the subject Pump had been shut off for a few minutes, allowing the Pump more than enough time to drain its contents, Mr. Morgan removed the suction (intake) hose. There should have been no pressure on the suction (intake) hose; however, upon removing the intake hose the subject Pump's contents sprayed scalding hot, raw sewage on Mr. Morgan's body from his chest to knees, resulting in second-degree burns over eleven percent of his body. He began screaming

11

and quickly stripped off all of his clothing. He was transported from the scene via ambulance to Wellstar Cobb Hospital.

26.

The City notified United Rentals that an injury had occurred with the subject Pump and asked that a United Rentals representative come to the site to discuss the Pump. The branch manager, Frank Troncalli, arrived on the scene later in the afternoon. He stated that if the head pressure on the pump is too high the pump will spin without pumping which could damage the pump. While on the scene, Troncalli admitted: "What I guess what my salesman shouldn't have done is put any pump on it without knowing the PSI that was, that was, that can't be overcome."

27.

Immediately upon being impacted by the scalding hot, raw sewage, Mr. Morgan experienced overwhelming pain. The subject Pump had spewed scalding sewage on his groin, lower abdomen, genitals, and both thighs down to the knees as well his left hand. The next morning, a surgical team performed surgery to fit cadaver skin to his genitals and lower extremities, during which the superficial dermis was excised, and cadaver skin grafts were secured with glue. Mr. Morgan was then admitted to the JMS Burn ICU. He was discharged from the ICU on March 20, 2020. For months, Mr. Morgan underwent additional excruciatingly painful treatment and therapy. For approximately two (2) months all he could do was take a shower and sit on the couch. Mr. Morgan's wife had to quit working in order to care for her husband.

28.

Mr. Morgan's skin and penis are permanently disfigured. In addition to a permanently disfigured penis, Mr. Morgan experiences sexual dysfunction. For many months Mr. Morgan could not have sex at all. Once he was able to have sexual relations again, he still was unable to ejaculate,

12

something that caused extreme emotional distress in large part because Mr. and Mrs. Morgan were trying to start a family.

29.

To date, Mr. Morgan's medical damages total $77,347.00; however, his medical expenses will continue to accrue. It is presently unknown if Mr. and Mrs. Morgan will have to use artificial insemination, surrogacy, or other alternative avenues in order to conceive a child.

30.

The Pump was marketed as a self-priming pump, but its design was defective because in the event the Pump lost prime, and continued to run, fluid contents would be overheated to levels that could cause severe burns and there was no way to know that the subject Pump had lost prime thereby retaining all of its contents. Because of the defective design, the aforementioned dangerous condition could only be discovered upon removal of the hoses, which was, of course, too late to prevent the user being sprayed with the overheated contents.

31.

The subject Pump should have been equipped with a safety mechanism properly marked or labeled to indicate whether the Pump had lost prime at any given time. Although the risk of the Pump failing to maintain prime and overheating was foreseeable to Defendants who had special expertise with fluid solutions and self-priming pumps, the subject Pump had no safety mechanisms, warnings, labels, gauges or indicators that would alert the user to the dangerous condition. Thus, it was impossible to determine whether the subject Pump had lost prime or that there was a risk of scalding fluids spraying the user.

32.

The subject Pump should have been equipped with a valve whereby the superheated fluids

13

could only be released in a manner that would not create the risk of burns to the user.

33.

The Subject Pump was marketed as a safe product, suitable for use by workers for municipal fluid solutions, when in fact, due to the aforementioned unaddressed design defects, the utility of the Pump was outweighed by the risks associated therewith. The Pump was unreasonably dangerous and posed a serious burn hazard to users, like Zackery Morgan, with no adequate warning of its dangers of overheating wastewater or sewage. As a direct and proximate cause of Defendants' negligent design and/or manufacturing of the subject Pump, Mr. Morgan sustained severe and painful second degree burns to eleven percent of his body and permanent injury and disfigurement, for which Defendants are liable.

34.

Mr. Morgan has incurred substantial medical bills and expenses, has lost time from work, has suffered permanent injury and sexual disfunction, has been disfigured, has suffered emotional distress, and has suffered and continues to experience pain and suffering. Likewise, Plaintiff Brittney Morgan has lost time from work, suffered emotional distress, lost the services of her husband and has been unable to conceive a child due to Mr. Morgan's injuries.

35.

Plaintiffs seek recovery from Defendants for all damages allowed under Georgia law, in amount to be determined by the jury at trial.

36.

Mr. Morgan was not negligent in his use of the subject Pump, nor did he do or fail to do anything that caused or contributed to the above-referenced incident or his injuries or damages.

## SPECIFIC COUNTS

### COUNT I

### Strict Liability

37.

Plaintiffs reallege and incorporate by reference paragraphs 1-35 above as if they were fully stated herein.

38.

At all times material to the allegations in this Complaint, the Corporate Defendants[5] were in the business of designing and manufacturing pumps used for fluid solutions, and they did design, manufacture, market, lease, and distribute the subject Pump giving rise to the subject matter of this lawsuit.

39.

Under O.C.G.A. § 51-1-11 and other applicable case law, the Corporate Defendants are strictly liable to Plaintiffs for the design and/or manufacturing defects in the Subject Pump and its component parts because the Pump was not merchantable or reasonably suited for its intended use when it was sold as new, and its defective condition when sold was the proximate cause of Mr. Morgan's injuries. In other words, the Subject Pump was defective when it left control of the Corporate Defendants, as the designer and manufacturer of the product, and the product's defect proximately cause severe burns to Mr. Morgan.

40.

The Corporate Defendants are strictly liable to Plaintiffs for the design defects in the

---

[5] The term "Corporate Defendants" as used herein includes United Rentals, Inc., United Rentals (North America), Inc., BakerCorp, and all applicable John Does Nos. 1-12 and 18-20 who might have manufactured the subject Pump and/or any of its component parts.

15

Subject Pump and its component parts because the risks inherent in the Pump's design outweigh any utility or benefit derived from the product, particularly considering the availability of safe alternative designs. At all times pertinent hereto, the Corporate Defendants knew, as product designers and manufacturers, that the Pump had to be designed and manufactured to minimize risks versus utilities, yet they designed, manufactured, marketed, and placed into the stream of commerce a defective and unreasonably dangerous product, exposing users, like Mr. Morgan, to a serious risk of harm.

41.

The Corporate Defendants are strictly liable to Plaintiffs for designing and/or manufacturing the subject Pump because it was not equipped with a safety mechanism or valve to prevent scalding fluids from spraying the user in the event of a pump malfunction.

42.

The Corporate Defendants are strictly liable to Plaintiffs for designing and/or manufacturing the subject Pump because it did not have labels or use instructions warning the user of the defects inherent in the product that would enable the user to guard against the risk of being burned with scalding fluids in the event of a pump malfunction.

43.

The Corporate Defendants are strictly liable to Plaintiffs for designing and/or manufacturing the subject Pump because there should have been a warning indicator or other mechanism to enable the user to ascertain or determine that the Pump had lost prime and/or that the fluids inside the Pump had reached dangerously high temperatures.

44.

The Corporate Defendants' defective product, the subject Pump, was the proximate cause

of Plaintiff's injuries, and, therefore, the Corporate Defendants are strictly liable for all injuries and damages to Plaintiff related to this incident.

## COUNT II:

### Negligence in Design, Manufacture, Marketing and Distribution

45.

Plaintiffs reallege and incorporate by reference paragraphs 1-43 above as if they were fully stated herein.

46.

At all times pertinent hereto, the Corporate Defendants had a duty of reasonable care to design, manufacture, market, and distribute non-defective products, including the subject Pump, which are reasonably safe for their intendeduses.

47.

The Corporate Defendants breached that duty when they designed, manufactured, tested, marketed, and placed into the stream of commerce a defective and unreasonably dangerous product, the subject Pump, which posed a serious safety hazard to users like Mr. Morgan.

48.

The Corporate Defendants knew, or in the exercise of ordinary care, should have known through their own testing, that the subject Pump and/or a component part(s) was unreasonably dangerous to those persons likely to use the product for the purpose and in the manner for which it was intended.  Despite this knowledge, the Corporate Defendants marketed and sold a defective product, exposing the public and Mr. Morgan to an unreasonable risk of harm.

49.

The Corporate Defendants owed Plaintiffs, as well as the public at large, a duty of

reasonable care in designing and manufacturing the subject Pump and/or a component part(s) of the subject Pump. They failed to act as ordinary, prudent manufacturers in designing and manufacturing the subject Pump and/or a component part(s) and violated their duties to the public, including Plaintiffs, and were negligent. The Corporate Defendants' negligence in designing and/or manufacturing the defective Pump and/or a component part(s) of the subject Pump was the proximate cause of Plaintiffs' injuries and damages, as described herein.

50.

The Corporate Defendants were negligent in designing and/or manufacturing the subject Pump because it was not equipped with a safety mechanism or valve to prevent scalding fluids from spraying on the user in the event of a pump malfunction.

51.

The Corporate Defendants were negligent in designing and/or manufacturing the subject Pump because it had neither labels nor use instructions to warn the user of the defects inherent in the product nor did it have indicators, gauges, safety valves or other safety mechanisms that would enable the user to both understand and guard against the risk of being burned with scalding fluids.

52.

The Corporate Defendants were negligent in designing and/or manufacturing the subject Pump because there should have been a warning indicator or other mechanism to enable the user to ascertain or determine that the Pump had lost prime and/or that the fluids inside the Pump had reached dangerously high temperatures.

53.

The negligence of the Corporate Defendants in the design and manufacture of the subject Pump was the proximate cause of Plaintiffs' injuries and the Corporate Defendants are liable for

all injuries and damages to Plaintiffs related to this incident.

**COUNT III**

**Negligence of Leasing Defendants[6]**

54.

Plaintiffs reallege and incorporate by reference paragraphs 1-52 above as if they were fully stated herein.

55.

The website for the Decatur branch of United Rentals represents: "The United Rentals Fluid Solutions team can handle your planned or unplanned fluid solution needs with the highest level of safety compliance and quality assurance. We offer portable and vac-assist pumps, large weir tanks near me [sic], dual-tank filter systems and more, either onsite or delivered to you. Our team of experts can help whether you need a single piece of equipment or a whole custom-engineered system. . . .  and our pump experts can help you keep your excavation or wastewater project completed on time. Visit your nearest Fluid Solutions branch to get started. . . .United Rentals has a team of pump experts dedicated to delivering a unique, specialized, custom solution for your industrial or commercial pump application needs. We carefully [sic] all aspects of a pump job to uncover inefficiencies and adapt a pump solution to keep your operation running smoothly. Look for diesel pumps, high pressure water pumps, electric hydraulic pumps, portable air pumps and submersible water pumps near me. Plus, United Rentals offers a full fleet of rental pumps, hoses and pump accessories."

56.

Plaintiff Zackery Morgan's employer engaged the Leasing Defendants to assist the WS&M

---

[6] As used herein the term "Leasing Defendants" includes Defendants United Rentals, Inc., URNA, and any of the John Doe Defendants Nos. 13-17 who were involved in the lease of the subject Pump to the City of Woodstock.

with its wastewater/sewage needs. The Leasing Defendants undertook: to consult with the City of Woodstock and recommend the use of the subject Pump for the City of Woodstock's fluid solutions needs; to deliver and set up the subject Pump at the City of Woodstock's job site; and to provide technical services, onsite support, and advice related to the use of and failure to perform of the subject Pump. Because of the extraordinary technical expertise of the Leasing Defendants, they were in a superior position of knowledge to that of the City of Woodstock, the WS&M, and end users like Zackery Morgan.

57.

The Leasing Defendants owed a duty of care to the users of the subject Pump in connection with the recommendation of the subject Pump, the delivery and setup of the subject Pump, and the technical services and advice provided in connection with operating the subject Pump.

58.

The Leasing Defendants breached their duty of care owed to the users of the subject Pump by failing to warn the users of dangers associated with the subject Pump as related herein.

59.

The Leasing Defendants breached their duty of care owed to the users of the subject Pump by giving inappropriate advice on how to alleviate or solve the problems encountered in the project with the subject Pump.

60.

The Leasing Defendants breached their duty of care owed to the users of the subject Pump by providing a defective product for use in the sewage/wastewater project at issue.

61.

The negligence of the Leasing Defendants was the proximate cause of Plaintiffs' injuries,

Case 1:22-cv-01552-LMM   Document 1-1   Filed 04/21/22   Page 22 of 25

and the Leasing Defendants are liable for all injuries and damages to Plaintiffs related to this incident.

COUNT IV

**Plaintiff Brittney Morgan's**
**Loss of Consortium and Spousal Support**

62.

Plaintiff Brittney Morgan realleges and incorporate by reference paragraphs 1-60 above as if they were fully stated herein.

63.

Plaintiff Zackery Morgan and Plaintiff Brittney Morgan are husband and wife.

64.

As a result of the negligence of Defendants, Plaintiff Brittney Morgan has suffered a loss of consortium, loss of companionship and loss of spousal support.

65.

As a result of the Defendants' negligence, Plaintiff, Brittney Morgan, requests damages to compensate her for her loss of consortium, loss of companionship and loss of spousal support.

COUNT V

**Punitive Damages**

66.

Plaintiffs reallege and incorporate by reference paragraphs 1-64 above as if they were fully stated herein.

67.

Defendants had actual knowledge that their product posed a serious burn hazard and

21

unreasonable risk of harm to users, like Mr. Morgan. Despite being on notice of the dangers and defective condition or designs associated with the subject Pump, Defendants consciously and willfully failed to take steps to protect or warn or said dangers, insteadplacing the product in the stream of commerce and continuing to sell and/or lease it for profit.

68.

Defendants' knowing failure to act to protect the safety of end users and their focus on placing profit ahead of safety, despite knowledge of the dangers of the subject Pump, is clear and convincing evidence demonstrating willful misconduct, malice, fraud, wantonness, oppression and/or entire want of care, which would raise the presumption of a conscious indifference to consequences, such that punitive (exemplary) damages are necessary to deter Defendants from repeating or continuing such unlawful and dangerous conduct in the future.

## DAMAGES

69.

Plaintiffs reallege and incorporate by reference paragraphs 1-67 above as if they were fully stated herein.

70.

Plaintiffs seek damages from Defendants for past, present,and future medical bills and expenses, and other necessary expenses resulting from Mr. Morgan's incident-related injuries in amounts shown by the evidence at trial and for Mrs. Morgan's loss of consortium and her loss of work as a result of having to leave her employment to care for Mr. Morgan after the incident.

71.

Plaintiffs seek damages from Defendants for all past, present, and future pain and suffering resulting from his incident-related injuries, in  an amount as determined by the enlightened

22

conscience of the jury.

72.

Mr. Morgan seeks a recovery from Defendants for any lost income and earning capacity proximately flowing from, substantially caused by, or resulting from the subject incident, as to be shown more fully by the evidence at trial.

73.

Plaintiffs seek a recovery of punitive damages from Defendants as described more fully above in an amount that will effectuate the societal functions and goals of punishing and deterring misconduct, but which comports with the Constitutions of the United States and the State of Georgia.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray for judgment as follows:

(a)   That the Court issue service of process to Defendants as authorized by law;

(b)   That Defendants Answer this Complaint as provided by law;

(c)   That Plaintiffs have a trial by jury;

(d)   That Plaintiffs recover from Defendants for all damages, economic and non-economic, tangible and intangible, general and special, as allowed by Georgia law and set forth above;

(e)   That all costs be taxed against Defendants; and

(f)   That the Court awards such other and further relief, as it shall deem just and appropriate.

23

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

This 17th day of March, 2022.

Respectfully submitted,

**BUSCH, REED, JONES & LEEPER, P.C.**

*/s/ M. Boyd Jones*

_____

M. Boyd Jones
Georgia State Bar No. 400891
Nicole A. Burgess-Busch
Georgia State Bar No. 558910
Betsy P. Collins
Georgia State Bar No. 334968

639 Whitlock Avenue SW
Marietta, Georgia 30064
bjones@buschreed.com
bcollins@buschreed.com
nburgess@buschreed.com
chart@buschreed.com
Tel: 770-424-1934
Fax: 770-575-4668

**THE PHILLIPS LAW FIRM, LLC**

*/s/ H. Dean Phillips with express permission*

_____

H. Dean Phillips
Georgia State Bar No. 517533

341 Lawrence Street NE
Marietta, GA  80060
dphillips@deanphillipslaw.com
Tel: 770-900-9175

Attorneys for Plaintiff